MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Avenue, Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff
GARBIS ICLISOY

DONAHUE & HORROW LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARBIS ICLISOY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY and THE NEIMAN MARCUS GROUP, INC. GROUP LONG TERM DISABILITY PLAN<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN**<br><br>Complaint Filed: |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* (hereafter, "ERISA") as it involves a claim by Plaintiff for long-term disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under 28 U.S.C. §1331 and 29 U.S.C. §1001, *et seq.* as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), 29 U.S.C. §1132(e)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4. Plaintiff GARBIS ICLISOY ("MR. ICLISOY"), is informed and believes and thereon alleges that Defendant THE NEIMAN MARCUS GROUP, INC. GROUP LONG TERM DISABILITY PLAN (the "Plan") is an employee welfare benefit plan established and maintained by The Neiman Marcus Group, Inc., a Delaware corporation, to provide its employees with income protection in the event of a disability, and, is the Plan Administrator.

5. MR. ICLISOY alleges upon information and belief that Defendant, RELIANCE STANDARD LIFE INSURANCE COMPANY ("RELIANCE"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Illinois and authorized to transact and transacting the business of insurance in this state.

6. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 10, are unknown to MR. ICLISOY who therefore sues said Defendants by such fictitious names.  MR. ICLISOY is informed and believes and on such information and belief alleges that each of the

Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to MR. ICLISOY.

7. MR. ICLISOY is, and was at all relevant times, a resident and citizen of the State of California, an employee of The Neiman Marcus Group, Inc. and a participant in the Plan.

8. RELIANCE issued Group Insurance Policy Number LTD 668451 to The Neiman Marcus Group, Inc. and the eligible participants and beneficiaries of the Plan.

9. The Plan provides a gross benefit of fifty percent (50%) of MR. ICLISOY's pre-disability earnings, less deductible income, following a 180-day Elimination Period. The Plan provides benefits until MR. ICLISOY's Normal Retirement Age as defined by the 1983 Amendments to the United States Social Security Act, which given his year of birth, is 66 years and 6 months.

10. The Plan defines "Total Disability" as follows:

'Totally Disabled' and 'Total Disability': mean, that as a result of an Injury or Sickness:

(1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;

(a) 'Partially Disabled' and 'Partial Disability' mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

    (b) 'Residual Disability' means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

  (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

11. Prior to his disability, MR. ICLISOY was employed as a Sales Associate in the shoe department at Neiman Marcus.

12. MR. ICLISOY was in a motor vehicle accident on February 17, 2017, which exacerbated neck and back issues that he was previously experiencing. Despite the pain and related restrictions and limitations, after his accident, he continued working for as long as he could.

13. MR. ICLISOY's last day of work was October 29, 2017. While MR. ICLISOY enjoyed and was good at his job, eventually the physical nature of the job, which required constant movement, including, walking, standing, kneeling and carrying, became too much for him to handle. Indeed, his treating physicians diagnosed his with a variety of conditions, including, but not limited to Back pain (M54.9), Cervical disc disease (MS0.90), Spondylolisthesis (M34.1), Spinal Stenosis (M48.0), Stage 2 chronic kidney disease (585.2 | N18.2), Soft Tissue Disorder (M79), Type 2 Diabetes (E11.9) and Diabetic Neuropathy (E11.43).

14. In or about April 2018, MR. ICLISOY submitted his claim for LTD benefits under the Plan to RELIANCE.

15. In support of his claim, MR. ICLISOY submitted an Employee Statement indicating that he could not longer work because of "extreme neck and back pain." He explained that his symptoms began in 2009, but escalated since his February 2017 car accident.

16. He also submitted an Attending Physician Statement, prepared by Serge Obukhoff, M.D., Ph.D. In the Statement, dated March 30, 2018, Dr. Obukhoff listed MR. ICLISOY's primary diagnoses as M51.26 (intervertebral disc displacement, lumbar region), M54.5 (low back pain) and M54.2 (Cervicalgia; neck pain). He also noted that MR. ICLISOY recently submitted to fusion an L4-L5, L5-S1 arthroplasty. As a result of MR. ICLISOY's ongoing symptoms, Dr. Obukhoff informed RELIANCE that MR. ICLISOY was unable "extremely limited" in his ability to perform "simple and repetitive tasks" and "complex and varied tasks," both of which were required in MR. ICLISOY's occupation.

17. Under the terms of the Plan, benefits first became payable as of April 26, 2018.

18. In support of his claim, MR. ICLISOY provided medical documents from a variety of physicians, including Dr. Obukhoff and Gregor Paronian, M.D., that supported his diagnoses and related restrictions and limitations.

19. Despite the evidence MR. ICLISOY provided to support his LTD claim, by letter dated November 5, 2018, RELIANCE informed MR. ICLISOY that it was denying his claim for Long-Term Disability benefits under the Plan, after concluding that the medical evidence did not support his claim that he was unable to continue in his job as a sales associate in the shoe department.

20. On or about May 13, 2020, MR. ICLISOY, through counsel, appealed the denial of his Long-Term Disability claim.

21. With the letter, MR. ICLISOY provided updated medical records from Dr. Paronian and Michael Avakian, DPM in support of the claim. In those records, MR. ICLISOY's treating physicians documents his diagnoses and related restrictions and limitations supporting the claim. In addition to the updated medical records, MR. ICLISOY's physicians prepared statements confirming his disability.

22. For example, Dr. Obukhoff prepared a January 20, 2020 report outlining MR. ICLISOY's disabling symptoms and treatment. He noted that MR. ICLISOY

had multilevel lumbar surgery L4-L5 fusion for spondylolisthesis and L5-S1 decompression followed by artificial disc replacement and also cervical surgery at C6-C7 decompression followed by foraminotomy and artificial disc replacement, and that following his accident, he developed intractable pain syndrome in his lower back and neck, and was diagnosed with discs injuries. As a result of these conditions, he underwent complicated lower back surgery, which, unfortunately did not relieve his back pain, as he still complains of residual lower back pain aggravated by any type of physical activity lifting and extensive walking. He also experiences residual radiculopathy in his left leg. In conclusion, Dr. Obukhoff explained that MR. ICLISOY "remains in rather severe disability and would not be able to return back to physical activity he had prior to the accident" and "I do not expect significant improvement of his condition; most likely he reached a plateau of his symptoms after surgery."

23. Dr. Paronian also prepared a statement, in which he outlined MR. ICLISOY's treatment, as well as his unequivocal support for his disability claim. He explained that MR. ICLISOY suffers from chronic low back pain due to lumbar disc disease status-post surgical repair, and that as a result, he cannot stand or walk continuously for any period greater than one hour.

24. In addition to Drs. Obukhoff and Paronian, board-certified podiatrist Michael Avakian, DPM, prepared a statement on May 12, 2020 outlining MR. ICLISOY's disability, restriction and limitations. He explained that MR. ICLISOY's left foot pain was aggravated with shoe gear, standing and ambulating. He also noted that MR. ICLISOY has a long history of cervical and lumbar disc disease, that ultimately had been treated with cervical disc replacement in December of 2017 and lumbar discectomy with arthroplasty in February 2018. Finally, he explained that Despite his best efforts and the efforts of treating physicians through surgeries, therapies and medications, MR. ICLISOY continues to experience symptoms that limit his ability to work and function.

25. In addition to these medical records, MR. ICLISOY provided RELIANCE with a vocational assessment and detailed Labor Market Survey prepared by vocational expert Charles Galarraga, MS, CRC, LCPC. After reviewing all file referral information, interviewing MR. ICLISOY regarding his training, education, and work history, performing a Transferrable Skills Analysis, and completing a telephonic Labor Market Study within a 50-mile radius of claimant's address, Mr. Galarraga opinioned that MR. ICLISOY cannot perform the substantial and material duties of his own occupation or any occupation from a vocational standpoint.

26. Finally, MR. ICLISOY provided RELIANCE with a personal statement, detailing why he was unable to work, as well as personal statements from his wife and son, further supporting his claims.

27. By letter dated May 19, 2020, RELIANCE acknowledged that it received MR. ICLISOY's appeal of the decision to deny his claim for benefits.

28. By letter dated May 26, 2020, RELIANCE informed MR. ICLISOY that it was reversing it earlier claim decision, and now agreed that MR. ICLISOY restrictions and limitations prevented him from performing the material duties of his regular occupation. RELIANCE eventually paid MR. ICLISOY the past due benefits he was owed.

29. Two days later, on May 28, 2020, RELIANCE indicated that the decision to approve MR. ICLISOY's claim was only made through April 26, 2020, the end of the "regular occupation" definition of disability, and that RELIANCE was reviewing his claim under the "any occupation" definition of disability.

30. By letter dated June 2, 2020, MR. ICLISOY provided RELIANCE with documents showing that his claim for disability benefits was approved by the Social Security Administration. With that determination, the SSA concluded that MR. ICLISOY was unable to perform the duties of any occupation.

31. Unfortunately, RELIANCE once again wrongfully denied MR. ICLISOY's claim for LTD benefits. By letter dated June 15, 2020, RELIANCE

informed MR. ICLISOY that it was denying his claim as of April 27, 2020 on the grounds that under the Plan's definition of disability, MR. ICLISOY was only disabled if he was unable to "perform the material duties of Any Occupation," and it determined that he could work as an Order Clerk, Information Clerk, Telephone Sales Representative or Customer Complaint Clerk, and therefore did not continue to qualify for benefits under the Plan.

32. On or about December 2, 2020, MR. ICLISOY, through counsel, appealed the denial of his Long-Term Disability claim under the "any occupation" definition of disability.

33. With the letter, MR. ICLISOY presented updated medical records supporting his disability, including, but not limited to, records related to his back pain, neck pain and Chronic Kidney Disease.

34. In support of MR. ICLISOY's claim, Dr. Paronian prepared an updated statement, explaining that he has treated MR. ICLISOY for seven years, and concluded that "He is currently disabled from any meaningful employment due to an injury sustained to his cervical and lumbar spine following a motor vehicle accident on 02/17/2017." He also noted that "Mr. Iclisoy is incapable of sitting for more than 2 hours continuously or more than 6 hours in total" and "[a]s result, Mr. Iclisoy is determined to continue to be significantly disabled and unable to engage in any employment of any occupation at this time."

35. In further support of his claim, MR. ICLISOY as submitted the results of a Functional Capacity Evaluation conducted on September 2, 2020 by Ramone De Los Reyes, PT, DPT. Therapist De Los Reyes confirmed that MR. ICLISOY's "physical behaviors correlated with his subjective complaints of pain" and that he "has limited tolerance for sustaining a prolonged sitting posture due to his low back pain and is unable to sit for 2 hours continually and up to 6 hours total," "exhibits poor posture when sitting, sitting sideways or at an angle, or sliding towards in chair when filling out consent forms and during interviewing," needs "to reposition due to his low

back pain and was unable to sit for more than 20 minutes continually and that "[t]hese factors, when coupled with his limitations with grasping, fingering, and repetitive reaching; would make it unrealistic that he would be able to function reliably in a work environment." In conclusion, Therapist De Los Reyes concluded that MR. ICLISOY "is unable to work at any occupational level at this time."

36. MR. ICLISOY also provided RELIANCE with an updated vocational assessment from Mr. Galarraga who based on his review of MR. ICLISOY's medical records, physician report, Functional Capacity Evaluation and his own interview concluded that "the claimant cannot, from a vocational standpoint, perform the substantial and material duties of the identified ANY Occupations of Information Clerk (DOT Code #237.367-022, SVP of 4, Strength Sedentary), Order Clerk (DOT Code #214.382-014, SVP of 4, Strength Sedentary), Telephone Sales Representative (DOT Code #299.357-014, SVP of 3, Strength Sedentary), and Customer Complaint Clerk (DOT Code #241.367-014, SVP of 5, Strength Sedentary) as they are performed in the national economy."

37. Finally, MR. ICLISOY noted that RELIANCE improperly disregarded the findings by the Social Security Administration's fully favorable March 6, 2020 decision, which confirmed that "The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity" and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." The Social Security Administration determined that MR. ICLISOY was entitled to SSDI benefits from April 1, 2018.

38. Following MR. ICLISOY's appeal, RELIANCE asked MR. ICLISOY to appear for an Independent Medical Examination by a physician who was paid by RELIANCE for his opinion. MR. ICLISOY complied with the request, and was provided with a copy of the report which, predictably, stated that he was able to return to work.

39. On April 30, 2021, MR. ICLISOY wrote a letter to RELIANCE disputing the result of the so-called "independent" examination, and further provided a summary of the examination provided by a nurse observer, which conflicted with the examiner's report. In the letter, MR. ICLISOY further summarized the medical evidence supporting his claim.

40. On or about May 26, 2021, RELIANCE denied MR. ICLISOY's appeal and affirmed the prior denial of the claim.

41. MR. ICLISOY's administrative remedies have been exhausted and he has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

42. As a direct and proximate result of the RELIANCE's denial of benefits, MR. ICLISOY has been deprived of said benefits from April 27, 2020 to the present date.

43. As a further direct and proximate result of the denial of benefits, MR. ICLISOY has been required to incur attorneys' fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g) (1).

44. A controversy now exists between the parties as to whether MR. ICLISOY is entitled to benefits under the Plan. MR. ICLISOY seeks the declaration of this Court that he is entitled to benefits from the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits as provided by the Plan, together with interest at the legal rate from the date it became due until the date it is paid;

2. For costs and reasonable attorneys' fees incurred in this action; and,

3. For such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: June 18, 2021 | DONAHUE & HORROW LLP<br><br>_____<br>MICHAEL B. HORROW<br>SCOTT E. CALVERT<br>Attorneys for Plaintiff |